IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-CV-01930 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THE CITY OF CHICAGO; Chicago police officers ANTHONY CERECES (#19293); JAMES HICKEY (#11523); SARGEANT ANTHONY SCHULTZ (#887); DAMIEN COLE (#2862); JAMES PAOLETTI (#5451); WAYNE OZMINA (#6579); and DOES 1 through 10, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carl Jackson brought this case alleging violations of 42 U.S.C. § 1983 and Illinois state law by Defendants Anthony Cereces, James Hickey, Sergeant Anthony Schulz[1], Damien Cole, James Paoletti, Wayne Ozmina and Does 1 through 10 (together, the "Defendant Officers") and the City of Chicago (the "City"). Before the Court are the Defendant City of Chicago and Defendant Officers' motions for summary judgment. The Court considers the defendants' motions together in this Opinion. For the following reasons, the defendants' motions are granted in part and denied in part.

## BACKGROUND

The plaintiff initiated this case on March 10, 2017. R. 1.[2] The operative Amended Complaint was filed on December 15, 2021, which contains seven counts: (1) excessive use of force of the Fourth Amendment under Section 1983; (2) false arrest in violation of the Fourth Amendment under Section 1983; (3) failure to intervene under Section 1983; (4) conspiracy to

---

[1] The briefs refer to this defendant inconsistently ("Schultz" and "Schulz"). The Court adopts the defendants' spelling of his name, "Schulz," and directs the Clerk to update the case caption accordingly.

[2] Citations to the docket are indicated by "R." followed by the docket number, and, where necessary, a page or paragraph citation.

deprive constitutional rights under Section 1983; (5) a *Monell* claim under Section 1983; (6) malicious prosecution under Illinois law; and (7) indemnification under Illinois law. R. 94. The Defendant City of Chicago filed a motion for summary judgment on May 24, 2024, seeking summary judgment in favor of all claims against them—specifically, Counts 5, 6, and 7. R. 168. The Defendant Officers filed a partial motion for summary judgment on May 24, 2024, seeking summary judgment on Counts 2 and 6.[3] R. 170. Neither motion seeks summary judgment on Counts 1, 3, or 4.

The following facts are taken from the parties' Local Rule 56.1 statements of undisputed material facts and the corresponding responses. *See* N.D. Ill. L.R. 56.1; *see also*, R. 169; R. 171; R. 186; R. 187; R. 194; R. 195; R. 201; R. 203. The following facts are taken from the record and are undisputed unless otherwise noted. Disputed facts are included only to the extent supported by record citations and only where material. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 503 n.1 (7th Cir. 2009) (facts are properly disputed only with citations to evidence that directly contradicts opponent's assertions). The facts and inferences therefore are construed in favor of the nonmoving party. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 503-504 (7th Cir. 2014).

The events underlying this lawsuit involve an encounter between the plaintiff and the Defendant Officers on March 12, 2015. R. 195 ¶ 3. The predicate for the encounter was patrol activity by an Area Six tactical team of police officers. Defendants state that Sgt. Schulz received information from an anonymous "concerned citizen" regarding "a black male driving a red-, 4-door Pontiac in the area of E. 80th St. & S. Evans Ave. selling narcotics." R. 171 ¶ 5. Defendants state that when Schulz went to that area, he saw a vehicle matching that description pull over and park. *Id.* ¶ 6. Schulz relayed this information to the tactical team. R. 171 ¶ 11. Defendants Cereceres, Hicky, Cole, Paoletti, and Ozmina encountered a red Pontiac at E. 80th St. and S. Langley Ave. *Id.* ¶ 12.

Jackson disputes that he was driving the red Pontiac about which the tipster informed Shulz. R. 194 ¶ 5. He states he was driving down South Langley Avenue when he saw a "for rent" sign in an apartment window. R. 195 ¶ 3. He noticed that the car behind him was driving extremely close to him, so he pulled over to get out of the way and to write down the phone number on the sign. *Id.* Defendants state that Officers Hickey and Cereces saw the red Pontiac fail to stop at a stop sign and pull into a handicap sign and park there without a permit. R. 171 ¶ 14. Jackson disputes this, stating that he did not park illegally or violate any traffic laws. R. 195 ¶ 4.

___

[3] The Court notes that the Defendant Officers state in their motion for summary judgment that "the Defendants move for summary judgment on all claims against them." R. 170 at 1. The Defendant Officers' summary judgment brief, however, only makes arguments seeking summary judgment on Counts 2 and 6 and does not address other counts, and the Defendant Officers themselves refer to their filing as a "*partial* motion for summary judgment" (emphasis ours). R. 173 at 1. Accordingly, the Court understands that the individual defendants do not seek summary judgment on the plaintiff's claims for use of excessive force (Count 1), failure to intervene (Count 3), and conspiracy (Count 4). Similarly, the Court construes the defendants' qualified immunity claim to be limited to the false arrest and malicious prosecution claims.

A group of men approached Jackson, wearing plainclothes. *Id.* ¶ 5. These men were Chicago Police officers, but Jackson did not know that. *Id.* Jackson did not see any police vests, name tags, badge numbers, radios, belts, holsters, handcuffs, markings on their backs, or anything else that would identify any of the men as Chicago Police officers. *Id.* The defendants dispute this characterization, stating that though the officers were wearing plainclothes and not police uniforms, each officer wore a police vest with a Chicago police badge plainly visible. R. 171 ¶ 15-20. Jackson was unarmed. R. 195 ¶ 6.

The officers pointed guns at Jackson, who remained sitting in his vehicle. *Id.* ¶ 7. Believing he was being robbed, Jackson started to get out of the car. *Id.* Immediately after exiting the vehicle, Jackson was tasered on his back. *Id.* ¶ 8. Jackson fell to the ground. *Id.* Jackson was immobilized—he could not pull away, fight back, get up, or run. *Id.* ¶ 9. Officer Cereces repeatedly tasered Jackson in the arm, back, leg, and chest, while the other officers kicked, stomped, and punched him, until he was severely injured. *Id.* Jackson curled his body into a ball to protect himself from the blows. *Id.* Jackson asked the officers for medical assistance, but he was denied. *Id.* ¶ 11. Officer Cole recovered three small baggies containing a powdery substance he believed to be heroin; one of the baggies was sent to the state lab for testing, which confirmed the substance was heroin. Jackson maintains that the officers planted the drugs on him.

The officers then arrested Jackson and transported him to a police station. *Id.* ¶ 12. Once there, he again requested, but was denied, medical treatment for his injuries. *Id.* ¶ 11. After being held overnight, Jackson was treated at a hospital for injuries and then transferred to the Cook County Jail. It appears that Jackson was released from custody two days later, presumably after a bond hearing, but the record does not make this clear. R. 94 ¶ 19; R. 191 at 9. Jackson was charged with several felony counts, including aggravated battery on a peace officer, manufacturing and delivery of heroin, battery, obstructing a peace officer, failing to stop at a stop sign, not wearing a seat belt, operating a vehicle without insurance, and parking in a spot for persons with disabilities. R. 195 ¶ 12.

The record contains no information as to how the initial charging decision was made. After Jackson complained to the Independent Police Review Authority ("IPRA") about the officers' use of excessive force, Jackson alleges that the officers' "conspired and acted together to cover up" the incident. R. 94 ¶ 25-26; R. 195 ¶ 15. Jackson further alleges, in conclusory fashion, that the officers filed false reports and gave false statements to prosecutors and the grand jury to influence the state's decision to charge him with various crimes and to prevent disclosure of their own misconduct. R. 195 ¶ 15. The record, however, provides no evidentiary basis for this claim.

On April 1, 2015, a preliminary hearing was conducted; a state court judge found probable cause as to the charges of obstructing a peace officer and aggravated battery of a peace officer. The judge also ruled that there was no probable cause to support the drug charge. The remaining charges were dismissed by the state. R. 94 ¶ 33. After a bench trial on September 14, 2021 (more than six years after the preliminary hearing), Jackson was found not guilty on the obstruction and battery charges. R. 94 ¶ 36.

Jackson filed this lawsuit in federal court in March 2017, alleging that the individual defendant CPD officers committed various constitutional violations and that those officers violated

his rights pursuant to City policy and practice. R. 1. He amended his complaint in this case after he was acquitted of the remaining charges against him. R. 94.

In addition to his claims against the individual officers, Jackson alleges that their misconduct was undertaken pursuant to various City policies. R. 186 ¶ 22. These policies included failing to train and supervise officers, failing to establish appropriate policies to address the improper use of excessive force, covering up acts of wrongdoing by police officers, failing to retain records documenting instances of excessive force, and perpetuating a code of silence. *Id.* ¶ 22-27.

The City moves for summary judgment on Jackson's claims, arguing that he has not plausibly alleged that one of its policies, customs, or practices caused his injuries. R. 168 at 1. The Defendant Officers move for summary judgment on his false arrest and malicious prosecution claims against the individual Defendant Officers, arguing that the officers had probable cause and therefore the plaintiff's claims against them cannot stand. R. 170 at 1.

## **DISCUSSION**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" if it might affect the outcome of the case under the governing law, and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If that burden is met, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," not merely rely on allegations in the pleadings. *Anderson*, 477 U.S. at 256. In deciding a motion for summary judgment, the Court does not weigh evidence or make credibility determinations; those tasks are reserved for the jury. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Instead, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-movant. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court addresses the defendants' challenges to the plaintiff's claims in the following order. First, the Court considers the plaintiff's False Arrest claim (Count 2) under Section 1983 against the individual officers. Next, the Court evaluates the plaintiff's Malicious Prosecution claim (Count 6) under Illinois law against the City and the Defendant Officers. Then, the Court assesses the plaintiff's *Monell* claim against the City (Count 5). Finally, the Court considers the plaintiff's indemnification claim (Count 7) under Illinois state law against the City.

## I.     **False Arrest Claim (Count 2)**

The plaintiff asserts a false arrest claim under Section 1983 against the Defendant Officers.[4] R. 94 ¶ 44-46.

---

[4] The Defendant City moves for summary judgment on all of the plaintiff's claims against Does 1-10, arguing "[a]t no point during the years this case has been pending has Plaintiff ever

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. A seizure occurs when, under the totality of the circumstances, a reasonable person would not feel free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554-58 (1980). "False arrest is shorthand for an unreasonable seizure prohibited by the Fourth Amendment." *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012). To prevail on this claim, a plaintiff must show that the arresting officer lacked probable cause to make the arrest. *Jackson v. Parker,* 627 F.3d 634, 638 (7th Cir. 2010).

## A. Probable Cause

An officer has probable cause to arrest if, based on the facts known at the time, a reasonable officer would believe the suspect had committed or was about to commit a crime. *Purtell v. Mason,* 527 F.3d 615, 626 (7th Cir. 2008). Courts assess probable cause under the totality of the circumstances and "do not consider the subjective motivations of the officer." *Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1114 (7th Cir. 2013) (internal quotation marks omitted).

Because probable cause renders a warrantless arrest reasonable, it is an "absolute defense to a § 1983 false arrest claim." *Gutierrez v. Kermon,* 722 F.3d 1003, 1007 (7th Cir. 2013). It is well-settled that "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017), citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, this claim turns on whether probable cause existed to arrest the plaintiff.

At the preliminary hearing in the criminal case on April 1, 2015, Officer Cole testified about Jackson's arrest.[5] R. 194-3. Officer Cole testified that he was among a number of officers who responded to a request by another unit for assistance in conducting a traffic stop. According to Cole, the responding officers were in plainclothes but had on vests and equipment identifying

---

attempted to determine the identity of the Doe Defendants nor has Plaintiff ever attempted to name them in this lawsuit. R. 176 at 22; R. 204 at 8-9. The City also argues that the two-year statute of limitations for claims against these officers has passed. *Id.* Plaintiffs do not respond to the Defendant City's arguments in their opposition to summary judgment, nor do they address the Doe defendants at all in their summary judgment briefing. *See* R. 188, R. 183, R. 191. Arguments not developed in response to a motion for summary judgment are treated as abandoned. *See, e.g., Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (stating that "because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment…his negligence claim is deemed abandoned"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver"); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (holding that a party "waives an argument by failing…to develop arguments related to a discrete issue"). Because the plaintiffs do not defend their claims against Does 1-10 at summary judgment, the Court treats the claims as abandoned. Summary judgment is therefore granted to Does 1-10 and they are dismissed from the case.

[5] Cole was the only officer who testified at the preliminary hearing.

them as police. As Jackson got out of the car, Cole testified, Jackson pushed Officer Hickey and then took off running. Several officers pursued Jackson and did an emergency takedown. Cole tried to assist the effort to handcuff Jackson and as Jackson struggled, he kicked Cole several times. Jackson continued to struggle until he was tasered. Cole also testified that he recovered several small pouches, which contained heroin, from Jackson's mouth.

Based on Cole's testimony, Judge Michelle Jordan of the Cook County Circuit Court found probable cause to arrest and charge the plaintiff with aggravated battery to a peace officer and resisting or obstructing a peace officer causing injury. R. 194 ¶¶ 42-44. The judge ruled that there was not probable cause to support the drug trafficking charge, however. Judge Jordan transferred the surviving charges to the criminal division. *Id.* The remaining charges were dismissed nolle prosequi or non-suited.

A judicial determination of probable cause is entitled to a presumption of validity. *See Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024); *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). That presumption may be rebutted only by showing that an officer "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest." *Lewis*, 914 F.3d at 477 (quoting *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)).

The plaintiff contends that the Defendant Officers "made false accusations against Plaintiff that caused him to be charged and prosecuted." R. 195 ¶ 36; R. 191 at 14. The defendants respond that that the plaintiff identifies no specific false statements or omissions, nor evidence that any such misrepresentation was "necessary" to the judge's ruling. R. 173 at 15-16.

The Court concludes that the plaintiff has presented sufficient evidence to rebut the presumption of validity afforded to the preliminary hearing probable cause determination. Jackson alleges that the judge's probable cause determination was based on the Defendant Officers' false testimony. That is only partly true; of the defendant officers only Cole testified at the preliminary hearing. Nevertheless, Defendant Cole testified that Jackson resisted arrest, battered officers, and caused injury during the encounter. *Id.* ¶ 39. Jackson disputes those assertions, maintaining that he exited his vehicle believing he was being robbed by armed men in plain clothes, was immediately tasered in the back, fell to the ground, and was unable to resist while officers continued to tase, kick, and strike him. *Id.* ¶¶ 27, 39. Jackson also disputes Cole's testimony that Jackson possessed heroin concealed in his mouth, asserting that officers fabricated the narcotics allegations. *Id.* ¶ 40. That issue is not material, however, as the state court judge did not find probable cause to charge Jackson with possession of drugs.

Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that Officer Cole knowingly or recklessly provided false information material to the probable-cause determination. The alleged false statements—that Jackson resisted arrest, battered officers, caused injury, committed traffic offenses, and possessed narcotics—formed the factual basis for the charges brought against him and were therefore necessary to the judicial finding of probable cause. R. 194 ¶¶ 14, 27, 39, 40. Accordingly, the plaintiff has presented sufficient evidence to rebut the presumption of validity attached to the preliminary hearing determination.

The presumption having been rebutted, genuine disputes of material fact preclude a determination of probable cause as a matter of law. If a jury credits Jackson's account that he neither resisted nor battered officers, it could reasonably conclude that the officers lacked probable cause. Because the probable cause determination depends upon disputed facts, the issue must be resolved by a jury rather than on summary judgment.

### B. Personal Involvement as to Defendant Schulz

The Court also addresses the Defendant Officers' argument that Defendant Schulz should be granted summary judgment on the false arrest claim on the basis that he lacked personal involvement in the incident, as required by § 1983. R. 170 at 1-2. This argument is unpersuasive.

Liability under § 1983 requires a finding that the defendant caused the constitutional deprivation at issue, such that he was "personally involved or acquiesced in the alleged constitutional violation." *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996). A claimant must establish a "causal connection[ ] or an affirmative link" between the defendant and the alleged conduct, *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), but need not show that the defendant directly participated in the violation, *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). A person acting under color of state law can be liable if he acts or fails to act in deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Id.*; *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

The Defendant Officers argue that Jackson cannot "establish that Sgt. Schulz was personally involved in the arrest of Plaintiff" because Schulz "never had contact at all with Plaintiff during the investigation and arrest." R. 173 at 20. Jackson counters that Schulz, as "the supervisor for all officers," "was the conductor of the carefully orchestrated acts that deprived Jackson of his constitutional rights." R. 191 at 2, 23-24. Jackson argues that Schulz was "the only officer who conducted surveillance; the only officer who received the tip; and was the only officer who allegedly saw a hand-to-hand transaction." *Id.* at 23-24. Jackson argues that it was based on Schulz's information alone that the other officers were prompted to arrest Jackson, and thus he was the one who "got the ball rolling" on Jackson's arrest. *Id.*

Viewing the evidence in the light most favorable to Jackson, the Court finds that the plaintiffs have sufficiently established that the constitutional deprivation alleged in this count—false arrest—occurred at Schulz's direction or with his knowledge and consent. *Crowder,* 687 F.2d at 1005. Thus, summary judgment is denied as to Defendant Schulz on the basis of lack of personal involvement.

### C. Qualified Immunity

The Defendant Officers also assert qualified immunity as to Jackson's arrest. Qualified immunity shield officers from liability unless the plaintiff demonstrates that the officers violated a constitutional right that was clearly established at the time of the challenged conduct. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). In the false arrest context, officers are entitled to qualified

immunity if they had "arguable probable cause" to arrest the plaintiff. *Abbot v. Sangamon County, Illinois,* 705 F.3d 706, 714 (7th Cir. 2013).

When facts material to a claim of qualified immunity remain in dispute, however, summary judgment is inappropriate. James Buchwalter et. al., *Federal Procedure, Lawyer* (§) 11:342. Without a settled set of facts, it is premature for the court to analyze the purely legal question of whether a defendant is entitled to qualified immunity. *See Morfin,* 349 F.3d at n. 13 ("Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law."). Here, the qualified immunity inquiry turns on sharply disputed facts, including whether Jackson resisted arrest, battered officers, possessed narcotics, or otherwise engaged in conduct giving rise to probable cause. Jackson maintains that he committed no traffic violations, did not resist or batter officers, and was immediately tasered and beaten by unidentified plainclothes men after exiting his vehicle. . R. 194 ¶ 14, 27, 39, 40. The Defendant Officers offer a materially different account. *Id.* Because resolution of the qualified immunity defense depends upon disputed predicate facts that must be resolved by a jury, the Court cannot conclude at the summary judgment stage that the officers are entitled to qualified immunity.

Accordingly, the Defendant Officers' motion for summary judgment on the plaintiff's false arrest claim (Count 2) is denied.

## II.    <u>Malicious Prosecution Claim (Count 6)</u>

The plaintiff also brings a claim for malicious prosecution under Illinois law against the Defendant Officers and the City. R. 94 ¶ 66-72. The plaintiff alleges that the Defendant Officers maliciously prosecuted him by causing criminal charges to be initiated and continued without probable cause. *Id.* 67. The plaintiff further alleges that the City is liable under a respondeat superior theory because the Defendant Officers were acting within the scope of their employment during the events at issue. *Id.* ¶ 71.

To prevail on a malicious prosecution claim under Illinois law, a plaintiff must establish: (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding was terminated in favor of the plaintiff, (3) there was an absence of probable cause for such a proceeding; (4) the presence of malice; and (5) the plaintiff suffered damages. *Hipes v. Katie Judge*, No. 417CV04014JESJEH, 2020 WL 1065708 *3 (C.D. Ill. Mar. 5, 2020); *Stoller v. Costco Wholesale Corp.*, No. 19-CV-140, 2020 WL 247459 *5 (N.D. Ill. Jan. 16, 2020). A plaintiff must establish each element in order to prevail. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("All of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution."). Summary judgment is appropriate if the absence of one or more of these five elements can be established to the point that it "may be fairly said that no genuine issue of fact as to its absence exists." *Harris v. City of Harvey*, No. 97 C 2823, 2000 WL 1468746 *9 (N.D. Ill. Sept. 29, 2000) (citing *Joiner v. Benton Community Bank,* 411 N.E.2d 229, 232 (Ill. 1980).

As an initial matter, the Court construes the plaintiff's malicious prosecution claim as proceeding only on the charges of aggravated battery to a peace officer and resisting or obstructing

a police officer causing injury—the charges that proceeded to trial and resulted in acquittal. R. 171 ¶ 49. In response to the defendants' motion, the plaintiff disclaims reliance on the charges dismissed at or before the preliminary hearing, including the narcotics and traffic-related offenses. R. 191 at 9. Accordingly, the Court need not resolve the defendants' arguments regarding the statute of limitations or whether the *nolle prosequi* dispositions on those charges constituted favorable termination under Illinois law. R. 173 at 6, 11. *See Swick v. Liautaud*, 169 Ill. 2d 504, 513 N.E.2d 1238 (1996); *Lund v. City of Rockford, Illinois*, 956 F.3d 938, 949 (7th Cir. 2020).

The Court proceeds to assess each element of the plaintiff's malicious prosecution claim to determine whether summary judgment can be granted.

### A. Commencement or Continuation of Proceedings

To prevail on a malicious prosecution claim against police officers, a plaintiff must show that the officers played a significant role in causing the commencement or continuation of the criminal proceedings. Under Illinois law, "[a] defendant is considered to have commenced criminal proceedings if he initiated a criminal proceeding or his participation was of so active and positive a character as to amount to advice and cooperation." *Smith v. Augustine*, No. 07 C 81, 2009 WL 481639 *9 (N.D. Ill. Feb. 25, 2009); *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 784 N.E.2d 258, 270 (Ill. App. Ct., 2002), citing *Denton v. Allstate Ins. Co.,* 152 Ill. App. 3d 578, 504 N.E.2d 756 (Ill. App. Ct., 1986).

Liability for malicious prosecution extends to police officers "who played a significant role in causing the prosecution of plaintiff," and plaintiff must show that the officers used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution. *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir.1996); *Newsome v. James*, 968 F .Supp. 1318, 1323 (N.D. Ill.1997) (stating the issue as whether the police officer "got the ball rolling in the unwarranted prosecution" of the plaintiff); *McCally-Bey v. Kirner*, 233 F. Supp. 2d 1009, 1017 (N.D. Ill. 2002); *Xie v. City of Chicago*, No. 14-CV-6082, 2016 WL 6193981 (N.D. Ill. Oct. 24, 2016), citing *McDade v. Stacker*, 106 Fed. Appx. 471, 475 (7th Cir. 2004) (holding that in order to maintain a malicious prosecution suit against arresting officers, a plaintiff must show that the officers' conduct influenced the decision to prosecute).

Ordinarily, the prosecutor's independent decision to indict "breaks the chain of causation linking the police to the wrongful prosecution." *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013), citing *Steeves v. McGrath*, No. 99 C 4567, 2000 WL 198895 *4 (N.D. Ill. Feb. 11, 2000), citing *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir.1996). However, that rule does not apply where officers knowingly provide false information or omit material facts that influence the charging decisions. *Rivera*, 974 F. Supp. 2d at 1191, citing *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). In discussing the liability of a police officer for malicious prosecution, the Seventh Circuit has stated that "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones*, 856 F.2d at 994.

In these instances, "claimants must allege some police wrongdoing *after* the arrest that influences the prosecutor's decision to bring the case to trial." *McGrath*, 2000 WL 198895 at *4. "Examples of post-arrest wrongdoing include giving false testimony or withholding exculpatory evidence." *Id.*, citing *Reed*, 77 F.3d at 1053 (dismissing malicious prosecution claim where "[t]here is no allegation that the detectives covered up exculpatory evidence or testified untruthfully"); *see also, Womack v. Aguirre*, No. 97 C 6020, 1998 WL 249228 at *2 (N.D. Ill. May 11, 1998) (allowing malicious prosecution claim where officers allegedly prepared false police reports and made false statements to prosecutors).

Viewing the record in the light most favorable to Jackson, and for the same reasons discussed above with respect to Jackson's false arrest claim, a reasonable jury could conclude that Officer Cole's allegedly untruthful testimony at the preliminary hearing played a significant role in initiating and continuing the prosecution against Jackson. R. 195 ¶ 12-15. According to Jackson, he exited his vehicle believing he was being robbed by armed men in plain clothes, was immediately tasered in the back, fell to the ground, and was unable to resist while officers continued to tase, kick and strike him. R. 195 ¶¶ 5-10. Cole's testimony cannot be squared with Jackson's, and at this juncture, Jackson must get the benefit of the doubt. *See Washington,* 98 F.4th at 871.

The record, however, supports a malicious prosecution claim against Defendant Cole, but not against the remaining Defendant Officers. The plaintiff points to evidence that Cole testified at the preliminary hearing regarding the events underlying the charges against Jackson, including allegations that Jackson resisted arrest and injured officers. R. 195 ¶ 12-15. By contrast, Jackson has not identified evidence from which a reasonable jury could conclude that the remaining Defendant Officers played a significant role in commencing or continuing the criminal proceedings. R. 191; R. 193; R. 194; R. 195. The record does not show that those officers testified at the preliminary hearing, communicated false information to prosecutors, or otherwise influenced the decision to prosecute Jackson. *Id.* Accordingly, Defendants Cereces, Hickey, Schulz, Paoletti, and Ozima are entitled to summary judgment on the plaintiff's malicious prosecution claim.

Defendant Cole, however, is not entitled to summary judgment on the commencement or continuation element of the plaintiff's malicious prosecution claim. The Court therefore proceeds to the remaining elements of the malicious prosecution claim as to Defendant Cole.

### B. Favorable Termination

To prevail on the second element of a malicious prosecution claim, Jackson must show that the criminal proceedings terminated in a manner indicative of his innocence. *Woods v. Vill. of Bellwood*, 502 F. Supp. 3d 1297, 1317 (N.D. Ill. 2020); *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) ("In order to fulfill the second element, a plaintiff cannot predicate his malicious prosecution action on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused."); *Bridewell v. City of Chicago*, 2012 WL 2458548 *4 (N.D. Ill. 2012) (finding that plaintiff had not carried her "burden of showing that the criminal prosecution concluded in a manner indicative of innocence") (citing *Swick*, 169 Ill. 2d at 513, 215 Ill. Dec. 98, 662 N.E.2d 1238). The relevant question, then, is whether his criminal case ended "for reasons consistent with his innocence." *Swick*, 169 Ill. 2d at 513.

The parties do not dispute that Jackson was acquitted of aggravated battery to a peace officer or obstructing a peace officer causing injury following a bench trial on September 14, 2021. R. 94 ¶ 36; R. 171 ¶ 49. A finding of "not guilty" by the state court is clear evidence that "the criminal proceedings terminated in a manner indicative of his innocence," and thus constitutes a favorable termination for the purposes of Illinois malicious prosecution law. *See Woods,*502 F. Supp. 3d at 1317; *Swick,* 169 Ill. 2d at 512-13. Accordingly, Defendant Cole is not entitled to summary judgment on the second element of the plaintiff's malicious prosecution claim.

### C. Absence of Probable Cause

Probable cause is an absolute defense to a malicious prosecution claim under Illinois law. *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015). For malicious prosecution under Illinois law, probable cause "is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. It is the state of mind of the person commencing the prosecution that is at issue — not the actual facts of the case or the guilt or the innocence of the accused." *Murawski v. Reid*, 375 F. Supp. 3d 998, 1007 (N.D. Ill. April 12, 2019), citing *Gauger v. Hendle*, 352 Ill. Dec. 447, 954 N.E.2d 307, 329 (2011); *see also, Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)

The malicious prosecution inquiry thus requires the Court to evaluate whether probable cause existed for the criminal proceedings at issue—here, the charges of aggravated battery and resisting or obstructing a peace officer causing injury. *See Holmes v. Village of Hoffman Estates,* 511 F.3d 673, 682 (7th Cir. 2007). The defendants argue, as they did in response to the plaintiff's false arrest claim, that the state court's finding of probable is entitled to a presumption of validity. R. 173 at 10-11. As discussed previously, however, the Court finds that the plaintiff has presented sufficient evidence to rebut the presumption of validity afforded to the preliminary hearing probable cause determination.

The presumption having been rebutted, genuine disputes of material fact preclude a determination of probable cause as a matter of law. The Defendant Officers contend that Jackson resisted arrest, battered officers, and caused injury during the encounter. R. 194 ¶ 14, 27, 39, 40. Jackson, by contrast, alleges that he never struck or resisted the officers and was instead immediately immobilized after being tasered in the back. *Id.* He further states that the officer continued to use force against him while he lay on the ground unable to flee or fight back. R. 195 ¶¶ 8-10.

If a jury credits Jackson's version of events, it could reasonably conclude that the officers lacked probable cause to believe Jackson committed aggravated battery to a peace officer or resisting or obstructing a peace officer causing injury. The Court therefore cannot resolve the probable cause issue as a matter of law at the summary judgment stage.

### D. Malice

Under Illinois law, malice "can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Holland v. City of Chicago,* 643 F.3d 248, 255 (7th

Cir. 2011). The Court has already established that a reasonable jury could conclude that the officers lacked probable cause to believe Jackson committed aggravated battery to a peace officer or resisting or obstructing a peace officer causing injury. The Court has also established that a reasonable jury could find that Officer Cole falsely testified during the probable cause hearing in the plaintiff's criminal case—a clear act of bad faith. Thus, construing the record in Jackson's favor, a reasonable jury could find that the officers lacked probable cause and acted in bad faith, and the jury could thus infer that Officer Cole acted with malice.

### E. Damages

To establish damages for a malicious prosecution claim under Illinois law, a plaintiff must have "suffered 'special injury' or special damage beyond the usual expense, time or annoyance in defending a lawsuit." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 602 (7th Cir. 1995), citing *Levin v. King,* 271 Ill. App.3d 728, 208 Ill. Dec. 186, 188, 648 N.E.2d 1108, 1110 (1995); *Keefe v. Aluminum Co. of Am.,* 166 Ill. App. 3d 316, 116 Ill. Dec. 740, 741, 519 N.E.2d 955, 956 (1988). Under Illinois common law, special injury is usually "identified with an arrest or seizure of property or some constructive taking or interference with the person or property." *Levin,* 208 Ill. Dec. at 188, 648 N.E.2d at 1110.

Jackson has presented sufficient evidence of damages to survive summary judgment. Jackson was arrested, detained, prosecuted on felony charges, and required to defend against criminal proceedings that remained pending for several years before resulting in acquittal. The parties do not dispute that Jackson required medical treatment in a hospital for injuries resulting from the arrest, including "bruises and swelling to his head and other parts of his body." R. 171 ¶ 18. The plaintiff also alleges "extreme emotional distress, and humiliating, lost employment opportunities, inconvenience, embarrassment, and mental anguish." R. 94 ¶ 40.  Construing the record in the light most favorable to Jackson, a reasonable jury could conclude that he suffered damages as a result of the allegedly wrongful prosecution. Accordingly, Defendant Cole is not entitled to summary judgment on the damages element of the plaintiff's malicious prosecution claim.

To the extent Defendant Cole argues that he is entitled to qualified immunity on the malicious prosecution claim, he is not.[6] Qualified immunity is a defense against federal constitutional claims and does not apply to Illinois common law malicious prosecution claims. *Kelly v. Vill. of Lemont, Illinois*, No. 17-CV-8462, 2021 WL 5493227 * 6 (N.D. Ill. Nov. 23, 2021) (holding that "qualified immunity does not apply to Illinois common law claims such as [the plaintiff's malicious prosecution claim"); *Jain v. Board of Educ. of Butler Sch. Dist. 53*, 366 F.Supp.3d 1014, 1019 n.4 (N.D. Ill. 2019) ("It does not appear that qualified immunity for federal

---

[6] The Defendant Officers appear to only pursue a qualified immunity defense in response to the plaintiff's false arrest claim. R. 173 at 2. However, the defendants sometimes refer to qualified immunity in the context of the malicious prosecution claim, and generally in a way that could be interpreted as arguing that qualified immunity protects them against all the plaintiff's claims. *Id.* at 6, 23. To avoid any ambiguity, the Court addresses the qualified immunity issues in regard to the malicious prosecution claim.

claims extends to state-law claims under Illinois law…"). Thus, the defendants are not entitled to summary judgment on the malicious prosecution claim on the basis of qualified immunity.

The City separately argues that the malicious prosecution claim against it must be dismissed if the claim against the individual officers fails. R. 176 ¶ 23. Because the Court denies summary judgment on the malicious prosecution claim against Defendant Cole, the City likewise is not entitled to summary judgment on the plaintiff's respondeat superior theory of liability. *See Wilson v. City of Chicago,* 120 F.3d 681, 684 (7th Cir. 1997).

Accordingly, the Defendant Officers' motion for summary judgment on the plaintiff's malicious prosecution claim (Count 6) is granted in part and denied in part. The motion is granted as to Officers Defendants Cereces, Hickey, Schulz, Paoletti, and Ozima, and is denied as to Defendant Cole.

### III.     *Monell* **Claim (Count 5)**

Plaintiff asserts a *Monell* claim under Section 1983 against the Defendant City of Chicago. R. 94 ¶ 57-65. It is well-settled that under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality cannot be held liable for constitutional deprivations under the theory of *respondeat superior*. *Id.* Instead, a municipality can only be held liable for its own actions. *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022). To establish *Monell* liability, then, a plaintiff must prove that "the constitutional violation was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *First Midwest Bank,* 988 F.3d at 986 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 694).

A plaintiff can show municipal action of at least the following three kinds: (1) an express policy that causes a constitutional deprivation when enforced; (2) a custom that is persistent and widespread, so that it is the municipality's standard operating procedure; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See* 7th Cir. Pattern Instruction 7.24; *see also, e.g.*, *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022) ("Municipal action giving rise to § 1983 liability may take the form of: (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policymaking authority.").

In this case, the plaintiff's *Monell* claim proceeds under a municipal custom theory. R. 94 ¶ 58. To survive summary judgment on a *Monell* claim based on a municipal custom theory, a plaintiff must present evidence from which a reasonable jury could conclude that: (1) a widespread and persistent municipal custom existed; (2) municipal policymakers were deliberately indifferent to or consciously disregarded the known or obvious consequences of the practice and (3) the practice was the "moving force" behind the constitutional injury. *See First Midwest Bank,* 988 F.3d at 987; *Giese v. City of Kankakee*, 71 F.4th 582, 588 (7th Cir. 2023).

The plaintiff argues that the City maintained a custom of permitting excessive force by failing to adequately train and supervise officers, failing to adequately investigate and discipline officer misconduct, and maintaining a code of silence within the CPD. R. 94 ¶ 62. The City argues that the plaintiff has failed to produce sufficient evidence establishing any municipal custom,

deliberate indifference, or moving force causation. R. 176 at 5-6. The Court addresses each requirement in turn.

## A. Evidence of a Municipal Custom

To establish a "policy or custom," the plaintiff must prove the existence of a pattern of behavior or conduct within the CPD that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002); *Denno v. Sch. Bd. Of Volusia Cnty., Fla.,* 218 F.3d 1267, 1277 (11th Cir. 2000). This Circuit has found that the word "widespread" should be "taken seriously." *See Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016). "There is no bright-line rule defining a widespread custom or practice, but 'it is clear that a single incident – or even three incidents – do not suffice.'" *Arquero v. Dart,* 587 F. Supp. 3d 721, 728 (N.D. Ill. 2022) (citing *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014)).

The plaintiff must also demonstrate that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan*, 463 F.3d at 790. The Seventh Circuit, however, has also warned against overstating the plaintiff's burden: "[T]o survive summary judgment, a plaintiff need not present a full panoply of statistical evidence showing the entire gamut of a defendant's past bad acts to establish a widespread practice or custom. Instead, it is enough that a plaintiff present competent evidence tending to show a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event)." *Abreu v. City of Chicago*, No. 19 C 2161, 2022 WL 1487583 *17 (N.D. Ill. May 10, 2022) (citing *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)).

The City contends that the plaintiff failed to produce sufficient evidence to show that the City engaged in a widespread practice or policy of engaging in excessive force, failing to adequately train and discipline its officers, and engaging in a code of silence. R. 176 at 5-6. But the record contains disputes of material facts precluding summary judgment. The Court considers each of the plaintiff's widespread practice theories—failure to train, failure to adequately investigate and discipline, and maintaining a code of silence—in turn.

1. Training

The City argues that CPD officers received constitutionally adequate training regarding the use of force and tasers and that its written policies complied with applicable constitutional standards. R. 176 at 7-8. The City further points to evidence that officers received academy instruction regarding use-of-force principles, procedural justice, and taser certification requirements. R. 169 ¶¶ 14-25.

But the plaintiff has presented sufficient evidence to create a triable issue of fact regarding whether CPD's training practices were constitutionally deficient and whether those deficiencies contributed to the alleged use of excessive force against Jackson. The plaintiff relies on the Department of Justice Report concerning CPD's use-of-force practices and accountability systems. R. 186 at 2. The DOJ Report identified deficiencies in CPD's training regarding the use of force, including inadequate refresher training, poor tactical guidance, and failures to ensure officers

14

consistently applied constitutional force principles in the field. R. 186 ¶ 12-17. The Report further criticized CPD's approach to supervising and investigating use-of-force incidents, including taser deployments. *Id* ¶ 18-24. Construing the record in the light most favorable to the plaintiff, a reasonable jury could conclude that these deficiencies reflected more than isolated incidents and instead amounted to systemic shortcomings in CPD's training and supervision practices during the relevant period. *Daniel v. Cook Cty.*, 833 F.3d 728, 740-41 (7th Cir. 2016) (stating that findings in a DOJ investigation "go a long way toward meeting a plaintiff's burden of proving an unconstitutional custom, policy, or practice under Monell").

The City disputes both the significance and admissibility of portions of the DOJ Report and argues that the Report alone is insufficient to establish *Monell* liability. R. 203 ¶ 3. But at summary judgment, the Court's role is not to weigh competing evidence or determine which side's interpretation is more persuasive. *Stewart v. Wexford Health Sources, Inc.,* 14 F.4th 757, 760 (7th Cir. 2021). The question is whether a reasonable jury could conclude that the City maintained constitutionally deficient training practices that contributed to the alleged violations. The Court finds that a reasonable jury could do so.

2. Failure to Discipline and Investigate

The plaintiff also alleges that the City maintained a custom of failing to adequately investigate and discipline officer misconduct, thereby permitting unconstitutional uses of force to persist. R. 186 at 19. The City responds that CPD and IPRA maintained extensive accountability mechanisms, including mandatory reporting requirements, disciplinary procedures, and investigations into allegations of excessive force. R. 169 ¶¶ 24-49. The City further notes that officers were disciplined for violations of COD Rules 14 and 22 and argues that this evidence defeats any inference of deliberate indifference. *Id.* ¶¶ 31-35.

Again, however, the record presents competing evidence that cannot be resolved at summary judgment. The DOJ Report documented substantial deficiencies in CPD's disciplinary and accountability systems, including failures to meaningfully investigate use-of-force complaints, sustain meritorious allegations, and identify patterns of officer misconduct. R. 186 ¶ 22. The plaintiff additionally submitted evidence of complaint registers and misconduct allegations predating the March 2015 incident. R. 186 ¶ 28-34.

Thus, whether the City's disciplinary systems were sufficient to prevent or deter the alleged unconstitutional violations presents a disputed factual issue inappropriate for summary judgment. Construed in the plaintiff's favor, that evidence could permit a reasonable jury to conclude that City policymakers were aware of recurring allegations involving excessive force, improper taser use, failures to report misconduct, and deficiencies in officer accountability before Jackson's encounter with the police. *Id.*

3. Code of Silence

Finally, the plaintiff alleged that the City maintained a "code of silence" within CPD that discouraged officers from reporting misconduct and enabled unconstitutional uses of force and subsequent cover-ups. The City disputes the existence of any such widespread practice and argues

15

that CPD rules expressly required officers to report misconduct and prohibited false statements. R. 169 ¶¶ 26-33.

But the plaintiff has presented sufficient evidence to survive summary judgment on this theory as well. The DOJ Report identified evidence suggesting that CPD officers routinely failed to report misconduct by fellow officers and that officers perceived reporting misconduct as disloyal or professionally dangerous. R. 186 ¶ 22-24. The plaintiff further alleges that the Defendant Officers coordinated false accounts of the incident and omitted material facts concerning the force used against Jackson. *Id.* ¶ 15.

Construing the evidence in the plaintiff's favor, a reasonable jury could infer that these alleged actions were not merely isolated conduct by individual officers but instead reflected a broader institutional culture discouraging the reporting of misconduct. Whether such a culture existed within CPD during the relevant period—and whether it contributed to the alleged constitutional violations here—are factual disputes for the jury to resolve.

### B. Deliberate Indifference

A municipality acts with deliberate indifference when policymakers are aware of a substantial risk of constitutional violations yet fail to take reasonable measures to address those risks. *See Giese*, 71 F.4th at 588. Notice may be established through evidence demonstrating that policymakers were aware of repeated constitutional violations or recurring misconduct but failed to take corrective action. *See Connick v. Thompson,* 463 U.S. 51, 61-62 (2011).

The City argues that the plaintiff cannot establish the notice requirement for deliberate indifference because the DOJ Report was published in January 2017, nearly two years after the March 2015 incident involving Jackson. R. 176 at 6-7 ("[T]he [DOJ] investigation had not even been announced or started – at the time of Plaintiff's arrest and encounter with police on March 12, 2015"); R. 204 at 3 (discussing "how the DOJ Report could have possibly provided the City notice when the investigation which led to this Report did not begin until *after* the incident with Plaintiff.").

Courts within the Seventh Circuit have taken differing approaches to whether a post-incident report may establish notice for purposes of deliberate indifference. Some courts have concluded that a report issued after the events at issue cannot, standing alone, establish pre-incident notice to policymakers. *See Harris v. City of Chicago*, No. 24 CV 3215, 2024 WL 5159412 *7 (N.D. Ill. Dec. 18, 2024) ("The DOJ report post-dates Harris's investigation, therefore it could not put the City on notice for purposes of deliberate indifference."); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 221 (7th Cir. 2021) (explaining that because the report "postdated all events relevant to this case and thus could not have given Wexford prior notice of anything"); *Von Ryburn v. Obaisi*, No. 14 CV 4308, 2022 WL 1444309 *4 (N.D. Ill. May 6, 2022) (discussing *Dean* and concluding that "the 2018 report is irrelevant to a *Monell* claim based on events that predate the report's publication").

Other courts, however, have concluded that a post-incident report may still be relevant to notice where the report analyzes incidents, complaint data, and investigative materials predating

the constitutional violation at issue. For example, in *Est. of McIntosh by Lane v. City of Chicago*, No. 15-CV-01920, 2022 WL 4448737 *12 (N.D. Ill. Sept. 23, 2022), the plaintiff asserted a *Monell* claim arising from a 2014 shooting. The City argued that the DOJ Report "came into existence over three years *after* McIntosh was shot and could not be the basis of the City policymaker's actual or constructive knowledge." *Id.* The Court rejected that argument, noting that the DOJ Report reviewed "force reports and investigative files for incidents that occurred between January 2011 and April 2016," which encompassed "the relevant time period here." *Id.* Likewise, in *Est. of Loury by Hudson v. City of Chicago*, No. 16-CV-4452, 2019 WL 1112260 *1 (N.D. Ill. Mar. 11, 2019), the court concluded that the "DOJ Report was timely for this case" because the report examined incidents occurring between January 2011 and April 2016, including the 2016 incident at issue there. *Id.*

This Court finds the reasoning of *Est. of McIntosh* and *Est. of Loury by Hudson* more persuasive in the circumstances presented here. This case involves the same DOJ Report discussed in those decisions. Although the Report was published in 2017, after the March 2015 incident involving Jackson, the Report itself analyzed CPD practices, force reports, complaint data, and investigative files concerning incidents occurring between 2011 and 2016. R. 189 at 7. Thus, the events underlying this case fall squarely within the period examined by the DOJ investigation. The Report therefore may constitute relevant evidence regarding whether unconstitutional practices and deficiencies existed within CPD during the relevant timeframe and whether policymakers had notice of those practices before Jackson's arrest.

In any event, the plaintiff does not rely solely on the DOJ Report to establish notice. The plaintiff also submitted evidence of complaint registers against the Defendant Officers predating the March 2015 incident. R. 186 ¶ 28-34. The Seventh Circuit has held that for the purposes of showing deliberate indifference, "actual or constructive notice of a problem" can be established by showing that the municipality "failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda v. Cty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). The plaintiff's evidence of complaints, viewed in the light most favorable to the plaintiff, could permit a reasonable jury to conclude that City policymakers were aware of recurring allegations involving excessive force, improper taser use, failures to report misconduct, and deficiencies in officer accountability before Jackson's encounter with the police.

Construing the record in the plaintiff's favor, a reasonable jury could conclude that City policymakers were aware of longstanding concerns regarding excessive force, deficient supervision, failures in accountability systems, and officer misconduct, yet failed to take adequate corrective measures during the relevant period. Summary judgment is therefore inappropriate on the issue of deliberate indifference.

## C. Moving Force Causation

Finally, the City argues that the plaintiff cannot establish that any municipal policy or practice was the "moving force" behind the alleged constitutional violations. R. 176 at 6. The Court disagrees.

17

To satisfy *Monell's* causation requirement, the plaintiff must present evidence permitting a reasonable jury to conclude that the municipal practice was closely related to—and directly caused—the constitutional injury at issue. *See Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997); *First Midwest Bank*, 988 F.3d at 987.

Here, the plaintiff alleges that officers repeatedly tasered, kicked, punched, and stomped him while he was immobilized and non-resistant. R. 195 ¶¶ 8-9. He further alleges that officers subsequently coordinated false accounts of the incident and concealed material facts regarding the use of force. *Id.* ¶ 15. If proven, a reasonable jury could conclude that those actions were facilitated by systemic deficiencies in training, supervision, discipline and accountability within CPD.

The City argues that alleged constitutional violations resulted solely from discretionary actions taken by individual officers in response to the plaintiff's behavior, rather than being "motivated by any alleged City policy when choosing which actions to take against Plaintiff." R. 176 at 21. But where a plaintiff presents evidence that officers acted in accordance with longstanding institutional practices that tolerated excessive force and discouraged accountability, causation becomes a question for the jury.

Accordingly, viewing the record in the light most favorable to the plaintiff, genuine disputes of material fact remain regarding whether the alleged municipal practices were the moving force behind the constitutional injuries alleged here. Summary judgment is therefore denied as to the plaintiff's *Monell* claim.

## IV. <u>Indemnification Claim (Count 7)</u>

Finally, the City seeks summary judgment on the plaintiff's indemnification claim brought pursuant to 745 ILCS 10/9-102. R. 176 at 5-6, 23. Under that provision, a local public entity must pay any tort judgment or settlement for compensatory damages "for which it or an employee while acting within the scope of his employment is liable." 745 ILCS 10/9-102.

The City argues that the indemnification claim fails because the underlying claims against the Defendant Officers fail as a matter of law. R. 176 at 23. The Court disagrees. As discussed above, genuine disputes of material fact preclude summary judgment on the plaintiff's claims for false arrest and malicious prosecution, and the Defendant Officers do not move for summary judgment on the plaintiff's remaining claims for excessive force, failure to intervene, and conspiracy. R. 173 at 1.

Because these underlying claims against the Defendant Officers survive summary judgment, the plaintiff's indemnification claim against the City likewise survives. *See Wilson*, 120 F.3d at 684 ("A municipality can have no indemnity obligation if there is no underlying liability on the part of its employee.") Accordingly, the City is not entitled to summary judgment on Count 7.

\*       \*       \*

18

The Defendant Officers' motion for summary judgment is granted in part and denied in part. The Defendant City of Chicago's motion for summary judgment is denied in large part and granted in part.

The Defendant Officers' motion for summary judgment on the plaintiff's Malicious Prosecution claim (Count 6) is denied as to Defendant Cole, and is granted as to Officers Defendants Cereces, Hickey, Schulz, Paoletti, and Ozima. The Defendant Officers' motion for summary judgment on the plaintiff's False Arrest claim (Count 2) is denied. The defendants did not move for summary judgment as to the plaintiff's Excessive Force claim (Count 1), Failure to Intervene claim (Count 3), and Conspiracy to Deprive Constitutional Rights claim (Count 4); accordingly, those counts remain at issue. The Defendant City of Chicago's motion for summary judgment against Defendant Does 1-10 is granted. Those defendants are dismissed from the case. The Clerk is directed to update the case caption to remove Does 1-10. The Defendant City of Chicago's motion for summary judgment is denied as to the plaintiff's *Monell* claim (Count 5), Malicious Prosecution claim (Count 6), and Indemnification claim (Count 7).

In sum, the plaintiff may proceed with his Excessive Force claim (Count 1), False Arrest claim (Count 2), Failure to Intervene claim (Count 3), and Conspiracy to Deprive Constitutional Rights claim (Count 4) against the Defendant Officers. The plaintiff may proceed with his *Monell* claim (Count 5) and Indemnification claim (Count 7) against the Defendant City of Chicago. The plaintiff may proceed with his Malicious Prosecution claim (Count 6) against Defendant Cole and Defendant City of Chicago.

A status hearing is set for June 4, 2026 at 2:00 p.m.

Date: May 26, 2026

John J. Tharp, Jr.
United States District Judge

19